**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MONTANA**

In re

**DAVID C WELSH** and                                        Case No.  **10-61285-13**
**SHARON N WELSH**,

                    Debtors.

# MEMORANDUM OF DECISION

At Butte in said District this 16th day of November, 2010.

Confirmation of Debtors' Plan (Docket No. 2) is pending in this Chapter 13 case.  The

Chapter 13 Trustee Robert G. Drummond objects to confirmation on the grounds that the Plan is

not proposed in good faith as required under 11 U.S.C. § 1325(a)(3) because Debtors proposed to

continue making payments on several secured claims while making "minuscule" payment to

general unsecured creditors[1].  The hearing on confirmation was held at Missoula on September 9,

---

[1]Paragraph 2 of the Trustee's objection (Dkt. 15), based on the disposable income
requirement of 11 U.S.C. § 1325(b)(2), was withdrawn by the Trustee at Dkt. 30.  In his post-
hearing brief, however (Dkt. 31), at pages 5 to 8 the Trustee revives his disposable income
objection.

1

2010.  Debtors were represented by attorney Edward A. Murphy ("Murphy") of Missoula, and

Sharon Welsh ("Sharon") testified.  The Trustee appeared in opposition to confirmation.  No

exhibits were admitted.  At the conclusion of the parties' cases-in-chief the Court granted the

parties time to file additional briefs, which have been filed and reviewed by the Court along with

the record and applicable law.  This matter is ready for decision.  For the reasons set forth below

the Court overrules the Trustee's objection and orders Debtors' Chapter 13 Plan confirmed.

This Court has jurisdiction in this Chapter 13 case under 28 U.S.C. § 1334(a).

Confirmation of Debtors' Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L).  This

Memorandum includes the Court's findings of fact and conclusions of law as provided at

F.R.B.P. 7052 (applying Fed. R. Civ. P. 52).

## FACTS

Sharon and David Welsh ("David") moved to Montana in 2006.  Sharon is employed as a

nurse at St. Patrick's Hospital in Missoula.  She testified that David used to work at a golf

course, but he suffers from chronic obstructive pulmonary disease (COPD) and his prognosis is

that he can remain stable or get worse, but will not get better and he cannot work.  David is

retired and collects social security.  Sharon testified that they live in a house on top of a ridge at

3831 Petty Creek Road, Missoula, and their driveway is a mile long with hairpin turns.

Sharon testified that when they first moved to Montana they rented, and finished their

house using credit cards.  She testified that, after making payments for 18 months, they

consolidated their credit card debt with Bank of America at a high interest rate of 15 percent

(15%) per annum, which Bank of America refused to reduce the interest rate.

Because of financial difficulties Debtors filed a voluntary Chapter 13 petition on May 27,

2

2010, along with their Schedules, Statements, Form B22C, and Plan.  Debtors' Summary of Schedules lists total assets in the sum of $466,230.20 and total liabilities of $590,828.81.

Schedule A lists Debtors' residence at 3831 Petty Creek Road in Missoula, which they list as having a current value of $400,000, encumbered by a secured claim in the sum of $330,593.66.

Schedule B lists personal property with a total value of $66,230.20.  Paragraph 25 of Schedule B lists six motor vehicles, including: a 2005 Ford F-250 with a current market value of $10,000; a 2006 Subaru Outback with a current value of $9,500.00; a 2005 Toyota Matrix with a value of $2,200.00; a 2005 Airstream trailer with a value of $23,000; and two 2007 Honda ATVs valued at $2,700.00 each.  Sharon testified that they use one or the other of the ATVs equipped with a snowplow to shovel their long driveway.  All their vehicles are listed as jointly owned by the Debtors, and all six are encumbered by secured claims.  Debtors claim one $204 motor vehicle exemption in the Toyota under Mont. Code Ann. ("MCA") § 25-13-609(2) on Schedule C[2].  Sharon testified that they purchased the Toyota for their daughter, who is a medical resident and cannot afford a car because she owes $150,000 in student loans.

Schedule D lists creditors holding secured claims.  Schedule D lists both Honda ATVs are overencumbered.  AHFC has a claim secured by one ATV, listed in the amount of $3,065.  GE Money Bank ("GE") has a claim secured by the other ATV, listed in the amount of $4,500.  Bank of America has a claim secured by Debtors' residence listed in the amount of $330,593.66.  The 2005 Airstream Trailer, valued at $23,000, is encumbered by a claim of "Citizen't [sic] Auto Finance" listed in the amount of $39,000.  The Subaru is encumbered by a claim listed in the

_____

[2]Schedule C does not list a homestead exemption.

amount of $12,211.00 in the name of JP Morgan Chase Bank NA ("JP Morgan"). The Toyota is encumbered by a claim listed in the amount of $1,996.00 in the name of LGFCU, and LGFCU is listed as having a claim secured by the Ford F-250 in the amount of $18,959.00.

Several secured creditors filed Proofs of Claim. Citizens Auto Finance ("Citizens") filed Claim No. 2 on June 10, 2010, asserting a claim in the amount of $37,936.22 secured by the Airstream trailer[3]. LGFCU filed Claim 10 on June 30, 2010, asserting a claim in the amount of $1,380.58 secured by the Toyota. Claim 10 includes as an attachment a copy of the Toyota's certificate of title stating David Conwell Welsh as the owner, and an attachment of the promissory note signed by David. LGFCU also filed Claim 11 on June 30, 2010, asserting a claim in the amount of $10,838.51 secured by the Ford F-250. American Honda Finance Corporation ("AHFC") filed Claim 16 on August 12, 2010, asserting a claim in the amount of $2,533.15 secured by a 2007 ATV, VIN 1HFTE336074201552. JP Morgan filed Claim 21 on October 13, 2010, asserting a claim in the amount of $10,680.86 secured by the Subaru. GE has not filed a Proof of Claim and the claims bar date has expired.

Schedule F lists unsecured claims totaling $180,504.15, the largest of which are Debtors' daughter's[4] student loan debt in the amount of $60,000, based on Debtors' personal guaranty, and a $50,000 joint debt owed to Bank of America on a line of credit. The remainder of creditors listed on Schedule F are mostly for credit card debt, medical and dental bills.

Schedule I lists Debtors' monthly income. Sharon's monthly income as a nurse is stated as $6,975.40, and she lists a pension income in the sum of $1,100.00 at line 12. David's income

---

[3]Citizens filed a second Claim No. 7, which was disallowed as a duplicate of Claim 2.

[4]Schedule H lists Debtors' daughter Lauren N. Welsh as codebtor to Sallie Mae.

4

is listed as $358.03 from wages, salary and commissions, even though he is retired and

unemployed, plus $1,165.00 in social security retirement income ("SSI").  After deductions for

taxes, social security and insurance Debtors' total combined average monthly on Schedule I is

$7,692.68.

Schedule J lists Debtor's current monthly expenditures in the total amount of $7,298.00,

including a $2,177 mortgage payment, $375 for utilities, $125.00 for telephone, $309 for other

utilities including cell phone ($85), satellite TV ($106), internet ($90) and garbage disposal

($28).  Debtors' tax expenditures for real estate taxes and vehicle taxes total $350.  Debtors list

food expenses at $600, transportation at $400.00, charitable contributions at $100.00.

Automobile expense is stated as $664, and Debtors list a total of $1,215.00 in "other installment

payments" for the Subaru ($375), Toyota Matrix ($150), $113 for one Honda ATV and $158 for

the other, and $419 for the RV.  Schedules I and J, taken together, show a monthly net income at

line 20c in the sum of $394.68.

Debtors completed and filed on May 27, 2010, Form B22C ("Chapter 13 Statement of

Current Monthly Income and Calculation of Commitment Period and Disposable Income") (Dkt.

3).  On Form B22C Debtors blacked in the boxes at the top of page 1 stating that the applicable

commitment period for their Chapter 13 Plan is 5 years, and that their disposable income is

determined under § 1325(b)(3), which refers to the "means test" at 11 U.S.C. § 707(b)(2).

Debtors listed their income in Part I of Form B22C[5], which at line 11 and line 20 states the total

"current monthly income" ("CMI") in the amount of $8,116.31.  That CMI does not include

---

[5]Sharon's income is listed in Column A of Form B22C, and David's income in Column
B.  They list their income in the opposite order on Schedule I.

5

David's monthly SSI income of $1,165 from Schedule I, because as discussed below SSI benefits are excluded from CMI by 11 U.S.C. § 101(10A)(B).

Part IV of Form B22C calculates deductions from Debtors' income for food, apparel, health care, housing[6] and utilities, transportation, taxes, insurance, and other expenses allowed under the means test totaling $3,993.76 at line 38. Line 46 adds additional monthly expenses for health and disability insurance totaling $346.01.

Subpart C lists deductions for debt payments, including at line 47 future payments on secured claims. Debtors list six such monthly payments: $67.50 to AHFC and $147.47 to GE for the two Honda ATVs; a $2,177 home mortgage payment to Bank of America; $425 to Citizens for the 2005 Airstream; $231.25 to JP Morgan for the Subaru; $80 to LGFCU for the Toyota; and $399 to LGFCU for the Ford F-250[7]. Sharon testified that the Debtors are current on all their secured obligations provided for in Form B22C.

The total future payments on secured claims at line 47 is $3,527.22. The Trustee's fee of $31.20 is added at line 50 and the total deductions for debt payment is stated at line 51 in the amount of $3,558.42. Lines 52, 56 and 58 lists the total deductions from income in the amount of $7,898.19. Deducting that sum from the CMI of $8,116.31 leaves monthly disposable income under § 1325(b)(2) at line 59 of Form B22C calculated in the sum of $218.12.

Debtors' Plan (Dkt. 2) provides for plan payments in the amount of $125.00 per month

---

[6]At line 25B Debtors list their $2,177 monthly mortgage payment below the IRS standard for mortgage or rent, and because their actual payment exceeds the IRS standard they entered $0.

[7]Under cross examination Sharon overestimated the Subaru payment in the amount of $375 per month, and the truck payment as $600 per month.

for 30 months and then increases to $500 per month for 30 months, or $18,750[8] in total plan payments.  Sharon testified that the monthly payments on the Subaru, Ford F-250, and Toyota all will cease during the 5 year plan term, and that their Plan payments will increase to $500 as the vehicles are paid off.  However, she testified that, after the Subaru is paid off, she will have to buy another vehicle because the Subaru has high mileage and she drives it 75 miles each day, so not all of the surplus funds will be available for increased plan payments.  Paragraph 2(c) lists unimpaired secured claims of Bank of America, AHFC, Citizens, GE, JP Morgan, and LGFCU along with a description of their respective collateral.  Paragraph 2(g) provides that unsecured claims will receive a distribution of at least $14,700.  Sharon testified that the Debtors will be able to make their plan payments during the 5-year term.

The Trustee filed objections to confirmation on July 26, 2010, on the grounds that Debtors' have not proposed their Plan in good faith under § 1325(a)(3) because of "minuscule" payments to unsecured claims while living in a $400,000 home and making payments on several secured claims, and that Debtors are failing to commit 100% of their disposable income as required under § 1325(b) and instead are deducting payments for unnecessary secured claims under § 707(b)(2)(A)(iii)[9].

Sharon testified that they have cut back on almost all outside entertainment and changed

---

[8]By contrast, 60 monthly payments of $218.12 monthly disposable income calculated at line 59 of Form B22C would result in $13,087.20, a difference of $5,662.80 less than the total payments under Debtors' proposed Plan.

[9]The Trustee withdrew the disposable income objection on September 23, 2010.  Dkt. 30. In reviewing Trustee's Objection filed on July 26, 2010, dkt. 15, he cites to § 707(b)(2)(B)(iii). The Court concludes that this citation and statutory reference must be a typographical error and believes the Trustee really meant § 707(b)(2)(A)(iii), which will be considered in this memorandum of decision.

their lifestyle to reduce expenses. She testified that they have cut back on their cell phone and internet usage, do not have cable TV, cut back on food and clothing and do not go to movies. She testified that they have used their Airstream trailer to travel to dog shows and to visit family, and still use it as lodging when they have visitors staying with them. They considered stopping payments on the Airstream, but decided to continue making the payments. The Trustee asked Sharon on cross examination about the Toyota which their daughter is using. She responded that they approached their daughter about paying for the Toyota but she is not able to make the payments because she works as a resident and pays approximately $1,000 to her student loans.

Sharon testified that they considered stopping payments on the ATVs, but they need at least one of them to plow their driveway and access their home, and during the winter her Subaru will not make it up their driveway unless they plow it using an ATV. They also use the ATVs to drive on nearby land owned by the Nature Conservancy.

## DISCUSSION

It is well established law in this Circuit that for a bankruptcy court to confirm a plan, "each of the requirements of section 1325 must be present and the debtor has the burden of proving that each element has been met." *In re Barnes*, 32 F.3d 405, 407 (9th Cir. 1994); *In re Andrews*, 49 F.3d 1404, 1408 (9th Cir. 1995); *In re McSparran*, 410 B.R. 664, 668 (Bankr. D. Mont. 2009); *In re Tuss*, 360 B.R. 684, 690 (Bankr. D. Mont. 2007); *In re Tranmer*, 355 B.R. 234, 241 (Bankr. D. Mont. 2006). Section 1325(a)(1) requires confirmation of a plan if "the plan complies with the provisions of this chapter and with the other applicable provisions of this title." Therefore, the Debtors have the burden of proof on all elements of confirmation. *Meyer v. Hill (In re Hill)*, 268 B.R. 548, 552 (9th Cir. BAP 2001).

**I. Disposable Income.**

Although he withdrew his disposable income objection at Dkt. 30, the Trustee continues to object to confirmation contending Debtors' Plan fails to satisfy the disposable income requirement of § 1325(b)(1)(B) because they omit social security income when calculating their projected disposable income.

Section 1325(b)(1) provides:

(b)(1) If the trustee . . . objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –

* * * *

(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

*Hamilton v. Lanning*, __ U.S. __, 130 S.Ct. 2464, 2469, 177 L.Ed.2d 23 (2010)

The Trustee cites *Lanning* for the proposition that pre-BAPCPA[10] practice included SSI income as a component of projected disposable income and, absent a clear indication that Congress intended a departure from pre-BAPCPA practice, the Supreme Court will not read the Bankruptcy Code to erode that past bankruptcy practice. 130 S.Ct. at 2473-74. The corollary to this must be that when there is a clear indication that Congress intended a departure from pre-BAPCPA practice, courts may read the Code to erode that past practice.

Because Congress did not amend the term "projected disposable income" in BAPCPA, the Trustee argues based on *Lanning,* pre-BAPCPA practice requires inclusion of SSI in the calculation of projected disposable income. Debtors contend that Congress made such a change

---

[10]Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. 119 Stat. 23.

9

when it enacted BAPCPA and so pre-BAPCPA practice no longer applies to include SSI in projected disposable income.

The Supreme Court in *Lanning* was referring to Congress' failure to amend the term "projected disposable income" in 2005 when it enacted BAPCPA, and what that failure meant with respect to whether courts may take into account virtually certain changes in debtors' income and expenses when projecting disposable income. 130 S.Ct. at 2473-74. However, the facts in *Lanning* do not include any mention of SSI as income, and the decision in *Lanning* does not construe applicable statutes governing treatment of SSI in bankruptcy. Stephanie Lanning had received a one-time buyout from her former employer which resulted in monthly disposable income calculated from her Form 22C in an amount much greater than the monthly income calculated from Schedules I and J. *Lanning*, 130 S.Ct. at 2470. Because Congress had not expressed an intent to depart from pre-BAPCPA practice, the Court held that the forward-looking approach and pre-BAPCPA practice allowed the Court to consider the debtor's reduced future income to confirm her plan. *Id.* at 2476.

A split of authority exists on the applicability of the *Lanning* decision to SSI benefits. The Trustee cites Utah bankruptcy cases, *In re Timothy*, 2009 WL 1349741 (Bankr. D. Utah) and *In re Cramer*, 433 B.R. 391 (Bankr. D. Utah 2010) as authority requiring that SSI should be included for purposes of calculating projected disposable income for Debtors to be eligible for Chapter 13 relief and for their Plan to be feasible.

This Court observes that *Cramer* recognized that "[t]here is no dispute that SSI is statutorily excluded from both the calculation of CMI under § 101(10A) and the calculation of DI under § 1325(b)(2) as both calculations are determined by using Form 22C." 433 B.R. at 395.

10

Notwithstanding that lack of dispute, the court in *Cranmer* denied confirmation of the debtor's

chapter 13 plan, relying on pre-BAPCPA case law, citing *Lanning*.  The Trustee argues that "this

court should hold that the most harmonious readings of all the statutes requires a finding that

social security income should be included in the disposable income determination."  Such a

finding would conflict not only with the above-quoted language from *Cranmer*, but also with the

plain language of two distinct and broad, yet specific statutes, governing SSI.

> The first is 42 U.S.C.§ 407 of the Social Security Act which states:

> (a) The right of any person to any future payment under this title shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this title shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

> (b) No other provision of law, enacted before, on, or after the date of the enactment of this section, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.

> (c) Nothing in this section shall be construed to prohibit withholding taxes from any benefit under this title, if such withholding is done pursuant to a request made in accordance with section 3402(p)(1) of the Internal Revenue Code of 1986 by the person entitled to such benefit or such person's representative payee.

*See Cranmer*, 433 B.R. at 393-94.

The court in *Cranmer* noted the debtor's response relying on 42 U.S.C. § 407 at 433 B.R.

at 393-94, but thereafter never returned to address § 407 in its decision.  Under Ninth Circuit

precedent this Court cannot ignore § 407.  The Ninth Circuit in *Lopez v. Washington Mut. Bank,*

*FA*, 302 F.3d 900, 903 (9th Cir. 2002), noted that 42 U.S.C. § 1383(d)(1) extends the protections

of 42 U.S.C. § 407(a) to SSI benefits.  It also recognized that case law has broadly construed the

phrase "other legal process" within § 407(a).  *Id.*; *Crawford v. Gould*, 56 F.3d 1162 (9th Cir.

1995).

This Court included the reference to subsections 407(b) and (c) above to demonstrate that Congress knew how to limit the application of 407(a) to limit or modify its provisions, by requiring express reference to § 407.  Neither § 1325(b) nor the good faith requirement of § 1325(a)(3) includes such an express reference to § 407 which is required to limit or modify its limitation to "other legal process, or to the operation of *any bankruptcy* or insolvency law." (Emphasis added).

This Court construed § 407 in *Anderson v. Internal Revenue Service*, 18 Mont. B.R. 369, 373-74 (Bankr. D. Mont. 2000).  The Court noted that § 407(b) states that no other provision of law may be construed to limit or modify § 407(a) unless the provision makes specific reference to § 407.  *Id.*, 18 Mont. B.R. at 373-74 (Section 6334(c) of the Internal Revenue Code governing IRS levies included the specific reference to § 407's predecessor, section 207 of the Social Security Act).  Other courts have found that § 407(b) serves to insulate social security benefits from the operation of bankruptcy laws.  *See, e.g.*, *In re Radford*, 265 B.R. 827, 830 (Bankr. W.D. Mo. 2000) (citation omitted).

In the instant case the Trustee has not identified any express reference to 42 U.S.C. § 407 which would limit or modify its provisions, either in the disposable income requirement of § 1325(b)(2), or the means test, or the good faith requirement of § 1325(a)(3).  On the contrary by enacting § 101(10A)(B) Congress demonstrated an intent to reinforce or buttress the protections of 42 U.S.C. § 407(a) against inclusion of SSI in CMI.

Courts must presume that a legislature says in a statute what it means and means in a statute what it says there.  *Connecticut National Bank v. Germain*, 503 U.S. 249, 253-54, 112

12

S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S.

235, 241-242, 109 S.Ct. 1026, 1030-31, 103 L.Ed.2d 290 (1989); *In re Jore Corp.*, 298 B.R. 703,

731 (Bankr. D. Mont. 2003). Given the breadth of § 407(a)'s protections against "legal process,

or to the operation of any bankruptcy or insolvency law[,]" and the absence of any express

reference to § 407 in the Bankruptcy Code cited by the Trustee, the language of § 407(a) cannot

be ignored. *Anderson*, 18 Mont. B.R. at 373-74. *Cranmer* did not address 42 U.S.C. § 407 other

than quoting it, and since it cannot be ignored and applies to "any" bankruptcy law this Court

declines to follow *Cranmer*, *Timothy*, and the other cases which require inclusion of SSI in

provisions of § 1325(a) which lack the express reference required by 42 U.S.C. § 407(b).

The second statute is 11 U.S.C. § 101(10A) which provides that "current monthly

income"

> (A) means the average monthly income from all sources that the debtor receives
> (or in a joint case the debtor and the debtor's spouse receive) without regard to
> whether such income is taxable income, derived during the 6-month period ending
> on –
>
>> (i) the last day of the calendar month immediately preceding the
>> date of the commencement of the case is the debtor files the
>> schedule of current monthly required by section 521(a)(1)(B)(ii); or
>> (ii) the date on which current income is determined by the court for
>> purposes of this title if the debtor does not file the schedule of the
>> current income required by section 521(a)(1)(B)(ii); and
>
> (B) includes any amount paid by any entity other than the debtor (or in a joint case
> the debtor and the debtor's spouse), on a regular basis for the household expenses
> of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if
> not otherwise a dependent), *but excludes benefits received under the Social
> Security Act ....*

(Emphasis added).

Section 101(10A) was inserted in 2005 in BAPCPA. Courts recognized that the

13

definition of disposable income calculated by reference to § 101(10A) was significantly revised by Congress in 2005 by substitution of the newly defined term CMI in § 1325(b)(2) in place of "income which is received by the Debtor." *In re Bartelini*, 434 B.R. 285, 294 (Bankr. N.D. N.Y. 2010); *In re Devilliers*, 358 B.R. 849, 865 (Bankr. E.D. La. 2007) (The calculation of disposable income or projected disposable income now begins with CMI).  The court in *Cranmer* admitted: "There is no dispute that SSI is statutorily excluded from both the calculation of CMI under 101(10A) and the calculation of DI under 1325(b)(2) as both calculations are determined by using Form 22C."  433 B.R. at 396.  Notwithstanding, the court then noted that the Supreme Court in *Lanning* upheld the Tenth Circuit's "determination that CMI and DI calculations are different that [sic] the calculation of PDI found in 1325(b)(1)(B)."  *Id.,* 433 B.R. at 395.

The Trustee's statutory interpretation based on *Lanning* and *Cranmer* conflicts with basic canons of statutory construction.  One such canon is that when the language of a statute is plain, the sole function of the courts is to enforce it according to its terms unless the disposition required by the text is absurd.  *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004); *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (in turn quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917))).  SSI is excluded from CMI under the plain language of § 101(10A)(B), and thus from disposable income under the means test.

Next the Trustee argues that *Lanning*'s forward-looking approach, which requires courts to measure projected disposable income as of the effective date of the plan, means that this Court should include Debtors' "actual" SSI to determine disposable income because it is certain to exist

14

in the future, notwithstanding the plain language of § 101(10A)(B) and 42 U.S.C. § 407(a).  The

Supreme Court stated:

> As the Tenth Circuit recognized in this case, a court taking the forward-looking
> approach should begin by calculating disposable income, and in most cases,
> nothing more is required.  It is only in unusual cases that a court may[11] go further
> and take into account other known or virtually certain information at the time of
> confirmation.

*Lanning*, 130 S.Ct. at 2475.

The Supreme Court noted:  "BAPCPA left the term 'projected disposable income'

undefined but specified in some detail how 'disposable income' is to be calculated."  130 S.Ct. at

2470.  *Lanning* makes clear in the above-quoted language at 130 S.Ct. at 2475 that calculation of

projected disposable income is not so much "different" from the calculations of CMI and

disposable income, as the court in *Cranmer* states at 344 B.R. at 395 citing the Tenth Circuit, but

rather the calculation of projected disposable income begins with CMI.  *Lanning*, 130 S.Ct. at

2475 ("[A] court taking the forward-looking approach should begin by calculating disposable

income, and in most cases, nothing more is required."); *Bartelini*, 434 B.R. at 294.

With SSI income excluded from CMI by § 101(10A)(B), which was enacted by Congress

in BAPCPA, pre-BAPCPA bankruptcy practice cannot apply to have the effect of adding SSI

back into projected disposable income without violating two federal statutes, § 101(10A)(B) and

42 U.S.C. § 407(a).  Courts should disfavor interpretations of statutes that render language

superfluous.  *Connecticut National Bank v. Germain*, 503 U.S. 249, 253-54, 112 S.Ct. 1146,

1149, 117 L.Ed.2d 391 (1992).

---

[11]The Trustee's quote at page 8 of his supplemental brief, Dkt. 31, omits all the language
from the passage before this footnote, which removed crucial context.

15

The Supreme Court held "that when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation."  130 S.Ct. at 2464.  "We hold that the 'forward-looking approach' is correct."  *Id.* at 2469.  *Lanning* is mandatory authority, and as such this Court is bound by it and obligated to change its mechanical approach to the forward-looking approach.

The Trustee argues that Debtors ask to apply the mechanical approach which was specifically rejected in *Lanning*.  The above-quoted passage in *Lanning*, however, states plainly that in most cases nothing more is required than simply calculating disposable income, which is what the mechanical test does, and "only in unusual cases" go further.  *Id.*

The Trustee does not explain how the instant case is an unusual case, and does not explain what changes in the Debtors' income or expenses are known or virtually certain at the time of confirmation.  David's SSI income has not been shown to increase or decrease during the term of the Plan.  The Debtors already have accounted for changes in their Plan and increased plan payments as their vehicles are paid off and the payments freed up.

The Trustee contends that *Lanning* rejected the mechanical approach to calculating projected disposable income, and so this Court should reject the mechanical approach and take into account Debtors' social security income because it is known or virtually certain, and avoid the "senseless results" which would occur by not including Debtors' social security income in their projected disposable income.  "The fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning."  *Union Bank v. Wolas*, 502 U.S. 151, 158 (1991).  It is not the courts' role to

16

avoid "senseless results" or rescue Congress from its drafting errors, and to provide what the court might think is the preferred result. *Tranmer*, 355 B.R. at 243, quoting *In re Rotunda*, 345 B.R. 324, 329 (Bankr. N.D. N.Y. 2006), citing *In re Alexander* 344 B.R. 742, 748 (Bankr. E.D. N.C. 2006) (quoting *Lamie*, 540 U.S. at 542).

The effect of *Lanning* is to increase this Court's discretion under § 1325: "We decline to infer from § 1325's incorporation of § 707 that Congress intended to eliminate, *sub silentio*, the discretion that courts previously exercised when projecting disposable income to account for known or virtually certain changes. Accord, *In re Liverman*, 383 B.R. 604, 613, and n. 15 (Bkrtcy. N.J. 2008)." *Lanning*, 130 S.Ct. at 2475.

Heeding *Lanning*, this Court begins by calculating disposable income from Debtors' Form B22C, and in most cases nothing more is required. *Lanning*, 130 S.Ct. at 2475. Debtors' Form B22C results in disposable income of $218.12 at line 59, which over the 5-year plan term totals $13,087.20 in plan payments, or $5,662.80 less than the $18,750 which Debtors propose in their Plan. Debtors' Plan's proposed distribution to unsecured claims, $14,700, by itself exceeds the total disposable income required under the means test over the term of the Plan.

The Trustee has not shown that this case is unusual, and has not shown any changes in Debtors' income or expenses that are known or virtually certain at the time of confirmation, which are not already reflected in Debtors' Plan. *See Lanning*, 130 S.Ct. at 2475, 2478. The Trustee asks that SSI be added back in when calculating projected disposable income, based on *Lanning*. But since no showing has been made that the case is unusual or that there are any changes in Debtors' income or expenses that are known or virtually certain at the time of confirmation, coupled with the plain language of § 101(10A)(B) excluding SSI from CMI and

17

the broad proscription of 42 U.S.C. § 407, and there being no express reference thereto in § 1325(b), this Court concludes that David's SSI is not subject to the disposable income requirement.  The Court finds that Debtors have satisfied their burden of proof under the disposable income requirement of § 1325(b).

    **II.  Good Faith.**

    The Trustee objects that Debtors' Plan has not been proposed in good faith as required by § 1325(a)(3).  *Hill*, 268 B.R. at 552.  The Court reviews the totality of the circumstances to determine whether a plan has been proposed in good faith.  *In re Leavitt*, 171 F.3d 1219, 1224-25 (9th Cir. 1999); *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir. 1994); *In re Gress*, 257 B.R. 563, 567, 18 Mont. B.R. 30, 34 (Bankr. D. Mont. 2000).  In *Leavitt* the Ninth Circuit held that in determining whether a Chapter 13 plan is proposed in good faith, a bankruptcy court should consider (1) whether debtors misrepresented facts in their plan or unfairly manipulated the Code, (2) the debtors' history of filings and dismissals, (3) whether the debtors intended to defeat state court litigation, and (4) whether egregious behavior is present.  *Leavitt*, 171 F.3d at 1224-25 (9th Cir. 1999); *Drummond v. Cavanagh (In re Cavanagh)*, 250 B.R. 107, 114 (9th Cir. BAP 2000).

    No evidence exists in the record, and the Trustee does not argue, that Debtors misrepresented facts in their plan or unfairly manipulated the Code.  No history of filings and dismissals by these Debtors is shown by the evidence, and no evidence exists that the Debtors' intended to defeat state court action.  Three of the four *Leavitt* factors weigh in favor of a finding that Debtors' proposed their Plan in good faith under § 1325(a)(3).

    Notwithstanding, the Trustee argues that the totality of circumstances weighs against

confirmation because Debtors' Plan will pay only approximately 8.5% of unsecured claims, while Debtors continue to make payments on claims secured by the Airstream, two ATVs and three automobiles.  The Trustee characterizes these payments as for luxury items not necessary for the maintenance of their home, which appears to parallel his disposable income objection. The Trustee contends that the payments for luxury items and support for their adult daughter constitutes egregious conduct, or behavior that is "remarkably bad" or flagrant, citing *In re Covino*, 245 B.R. 162 (Bankr. D. Idaho 2000).  Debtors deny that they engaged in egregious conduct, and argue that they found themselves in a financial predicament because of cost overruns on their house and inability to refinance with Coutrywide, a company that itself collapsed, and exhausted their savings.

The facts in *Covino* which gave rise to a finding of bad faith included filing a Chapter 13 case in an attempt to circumvent a penalty imposed on the debtors for inappropriate conduct in a prior bankruptcy case, including concealment of assets. 245 B.R. at 166-67, 169.  The Chapter 13 plan proposed by Covinos called for $75 monthly payments for 36 months, and total payments of $1,800 to unsecured creditors.  245 B.R. at 167.  No corresponding egregious or flagrant conduct by Debtors is shown in the instant record.  There is no evidence of concealment of assets, prior bankruptcy cases, and Debtors are paying into their Plan and to unsecured creditors much more than the disposable income calculated on Form B22C.

No definition of "egregious" exists in § 1325(a)(3).  If a statute uses a term which it does not define, the court gives that term its ordinary meaning.  *DeGeorge v. United States District Court for the Central District of California*, 219 F.3d 930 , 936-37 (9th Cir. 2000).  "Egregious" is defined in Webster's Third International Dictionary (1961) variously as "extraordinary,"

"extreme," and "flagrant."  Egregious behavior supporting a finding of bad faith *In re Opper*, 20 Mont. B.R. 123, 132 (Bankr. D. Mont. 2002), consisted of debtors proposing $0 to unsecured creditors while making payments to secured creditors to retain luxury items such as a boat and snowmobile, repaying a loan to a 401(k) plan[12], and failure to list assets.  *Opper*, 20 Mont. B.R. at 132.

The facts shown by the record in the instant case are not comparable to *Opper*.  Debtors' Plan proposes $14,700 in payments to unsecured creditors.  Their ATV's are not a luxury, since at least one is required for Sharon to plow her driveway in the winter in order to reach her home. David is the owner of the Toyota, on which they make payments but let their daughter use, and the secured creditor filed a claim in this case which has been allowed without objection showing David is the borrower.  Their retention of the Airstream, by itself, is not enough to find egregious conduct.

The Trustee's good faith objection based on their payments to secured claims ignores the fact that payments to secured claims are authorized in the means test at 11 U.S.C. § 707(b)(2)(A)(i) and (iii).  *In re Egebjerg*, 574 F.3d 1045, 1048-49 (9th Cir. 2009) ("In calculating the debtor's current monthly income, § 707(b)(2) permits the debtor to deduct ' the average monthly payments on account of *secured debts.*'") (Emphasis in original).  The Supreme Court in *Lanning* noted that, for above-median income debtors, the expenses included in § 707(b)(2) are included in the means test.  130 S.Ct. at 2470.  Thus, *Lanning* recognizes that secured claims provided at § 707(b)(2)(A)(iii) are included.  *Id.*  This Court has adopted the analysis from *In re*

---

[12]Under BAPCPA and § 1322(f) repayment of a 401(k) loan is now authorized. *Egebjerg*, 574 F.3d at 1050.

*Austin*, 372 B.R. 668, 680-83 (Bankr. D. Vt. 2007), that where a debtor is current on a secured

obligation that is provided for in Form 22C, the Court refrains from determining whether the

expense is reasonable.  *McSparran*, 410 B.R. at 671.  Sharon testified that the Debtors are current

on all their secured obligations provided for in Form B22C, so the Court refrains from

determining whether their payments to secured claims are reasonable.

The Trustee contends that the Court should extend the reasoning of student loan

dischargeability cases to the instant case because Debtors have not sought to minimize their

expenses, citing *In re Hamilton*, 361 B.R. 532, 557 (Bankr. D. Mont. 2007).  The instant case

does not involve dischargeability of student loans under 11 U.S.C. § 523(a)(8), so *Hamilton* does

not apply.

The Trustee next argues that Debtors' failure to utilize David's SSI income to increase

their plan payments to creditors is an indicia of egregious behavior sufficient to find bad faith.

The Trustee contends that Debtors can apply their SSI to their basic needs and offset other

income currently being used, and free up money for plan payments, citing *in re Hall*, 2010 WL

3447575 (Bankr. D. Idaho 2010).  *Hall* cites the *Hagel v. Drummond*, 184 B.R. 793, 798 (9th Cir.

1995) as support for applying social security benefits to basic needs.  As the court in *Devilliers*

notes, the provision of BAPCPA is an unambiguous directive that social security benefits are not

considered in calculating disposable income.  358 B.R. at 866 and n.26 (quoting 42 U.S.C. §

407(a))[13].  Given the enactment of § 101(10A)(B) in 2005, the decision in *Hagel* that debtors

must use social security benefits for their basic needs and include them in the disposable income

---

[13]Based upon specific exceptions to 42 U.S.C. § 407(a) not at issue here, the court noted
that payroll taxes and medical bills payable from SSI are subject to a trustee's objection that they
are not reasonable and necessary deductions from CMI.  *Devilliers*, 358 B.R. at 866.

calculation is no longer valid, and *Hall*'s citation to *Hagel* lends that decision no weight.

      The Trustee cites *In re Rodgers*, 430 B.R. 910 (Bankr. M.D. Fla. 2010) as an example where the court considered exempt social security benefits in calculating good faith and disposable income. *Rodgers* cites several pre-BAPCPA cases, including *Hagel*, which as discussed above no longer apply because of the enactment of § 101(10A)(B) excluding SSI from CMI and expressing an intent to depart from pre-BAPCPA practice. 430 B.R. at 913-14. In addition the court in *Rodgers* found that the debtors' excess actual income, even resulting from excluded social security income, "must be counted toward a Debtors' current monthly income and, thus, towards their projected monthly income." 430 B.R. at 914. In this Court's view that clearly violates § 101(10A)(B) which by its plain language excludes SSI from CMI.

      On the issue of good faith the court in *Rodgers* applied a list of non-exclusive factors from the Eleventh Circuit in determining whether the plan was proposed in good faith, including the amount of the debtor's income from all sources and the living expenses of the debtor and his dependents. This Court follows the Ninth Circuit analysis from *Leavitt* and, while the Court considers David's SSI benefits as one of the totality of the circumstances, the Court does not consider the SSI benefits probative of a lack of good faith in proposing the Plan under § 1325(a)(3).

      Courts generally avoid construing one provision in a statute so as to suspend or supersede another provision. *Rake v. Wade,* 508 U.S. 464, 471-72, 113 S.Ct. 2187, 2192, 124 L.Ed.2d 424 (1993). Courts should disfavor interpretations of statutes that render statutory language superfluous, and so long as there is no positive repugnancy between two laws, a court must give effect to both. *Connecticut National Bank v. Germain*, 503 U.S. at 252-54. Statutory

22

construction canons require that "[w]here both a specific and a general statute address the same subject matter, the specific one takes precedence regardless of the sequence of the enactment, and must be applied first." *In re Padilla*, 222 F.3d 1184, 1192 (9th Cir. 2000); *In re Khan*, 172 B.R. 613, 624 (Bankr.D.Minn.1994) (citing *Busic v. United States*, 446 U.S. 398, 406, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980) and *Preiser v. Rodriguez*, 411 U.S. 475, 489-90, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)).

Section 101(10A)(B) and 42 U.S.C. § 407 are two separate federal statutes, each more specific than § 1325(a)(3) with respect to SSI benefits.  Section 1325(a)(3) does not include the express reference to § 407 which § 407(b) requires in order to limit or otherwise modify § 407(a)'s prohibition against "the operation of any bankruptcy . . . law" against SSI.  The Trustee's good faith objection on the basis of SSI cannot be sustained without running afoul of 42 U.S.C. § 407(a) and the above-listed canons of statutory construction, while overruling the good faith objection gives them effect without weakening § 1325(a)(3).

Debtors cite the Eighth Circuit case *In re Thompson*, __ F.3d __, 2010 WL 3583400, *3 (8th Cir.) which, citing *Lanning*, held that because of § 101(10A)(B)'s exclusion of SSI from CMI, considering the same issue under the good faith test would be duplicative and render § 1325(b)'s ability to pay test meaningless.  This Court agrees.  *In re Chavez*, Case No. 07-60567-

23

13 (October 11, 2007[14]) and *In re O'Connor*, Case No. 08-60641-13 (September 30, 2008[15]), this Court overruled good faith objections because the adequacy of plan payments is determined by Form 22C.  Based on those cases, Form B22C filed in the instant case, 42 U.S.C. § 407(a), and there being no express reference thereto in § 1325(a)(3) modifying or limiting § 407(a), and there being no evidence of the first three *Leavitt* factors for bad faith, the Court finds that the Debtors have satisfied their burden of proof to show that they proposed their Plan in good faith. The Trustee's good faith objection based on § 1325(a)(3) is overruled.

## CONCLUSIONS OF LAW

1.  This Court has jurisdiction of this case under 28 U.S.C. § 1334(a).

2.  Confirmation of Debtor's Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

3.  Debtors satisfied their burden of proof under 11 U.S.C. § 1325(b)(1)(B), (b)(2), and (b)(3) to show that their Plan provides that all of the Debtors' projected disposable income to be received in the applicable commitment period will be applied to make payments to unsecured creditors under the Plan.

4.  Current monthly income defined under BAPCPA, § 101(10A)(B), excludes benefits

---

[14]Memorandum of Decision, Docket No. 50.  At pages 9 and 10 this Court quoted extensively *Austin*, 372 B.R. at 682-83, and ruled that where debtors properly computed the plan payment under the means test the Court would not deny confirmation based on the good faith requirement.  *See also In re Farrar-Johnson*, 353 B.R. 224, 232 (Bankr. N.D. Ill. 2006)*.*  The Chapter 13 Trustee Drummond did not appeal the Court's decision in *Chavez*.

[15]Memorandum of Decision, Docket No. 31.  As in *Chavez* the Court at pages 28-31 quoted *Austin*, 372 B.R. at 680-83 for the proposition that if a secured claim expense is properly included on Form 22C then issues of reasonably necessary expense and bad faith would not arise. The debtors in *O'Connor* failed to disclose a boat payment, but this Court determined that the failure to include the boat expense on Form 22C did not by itself establish lack of good faith. Drummond did not appeal the decision in *O'Connor*.

received under the Social Security Act; Section 101(10A)(B) is a clear indication that Congress

intended a departure from pre-BAPCPA practice and exclude SSI income from the disposable

income calculation.  *Hamilton v. Lanning*, 130 S.Ct. at 2474-75.

     5.  The Trustee failed to show, and there is no evidence in the record, that this was an

unusual case which would allow the Court to go further and take into account changes or other

known or virtually certain information about the Debtors' future income or expenses.  *Hamilton*

*v. Lanning*, 130 S.Ct. at 2475, 2478.

     6.  Debtors satisfied their burden of proof under § 1325(a)(3) that their Plan has been

proposed in good faith and not by any means forbidden by law; and they satisfied their burden

under all other requirements for confirmation in § 1325(a).

     **IT IS ORDERED** that separate Orders shall be entered in conformity with the above (1)

overruling the Trustee's objections; and (2) confirming Debtors' Chapter 13 Plan (Dkt. 2).

                      BY THE COURT

                      *Ralph B Kirscher*

                      HON. RALPH B. KIRSCHER
                      U.S. Bankruptcy Judge
                      United States Bankruptcy Court
                      District of Montana